131 P.3d 517

MAUI TOMORROW, formally known as
Maui Tomorrow Foundation, Inc.,
and its supporters, Appellant

v.

STATE of Hawai'i, BOARD OF LAND
AND NATURAL RESOURCES OF the
STATE OF HAWAI'I; Department of
Land and Natural Resources of the
State of Hawai'i; Peter T. Young, in his
official capacity as Chairperson of the
Board of Land and Natural Resources
and the Director of the Department of
Land and Natural Resources; Alexander
& Baldwin, Inc.; East Maui Irrigation
Co.; Maui Land & Pineapple Co., Inc.;
County Of Maui, Department of Water
Supply; Hawai'i Farm Bureau Federa-
tion, Appellees.

Na Moku 'Aupuni O Ko'Olau Hui; Bea-
trice Kekahuna; Marjorie Wallett; Eliz-
abeth Lapenia, Appellants–Appellants

and

Maui Tomorrow, Appellant–Appellee.

v.

State of Hawai'i, Board of Land and Natu-
ral Resources of the State of Hawai'i;
Department of Land and Natural Re-
sources of the State of Hawai'i; Peter T.
Young, in his official capacity as Chair-
person of the Board of Land and Natu-
ral Resources and the Director of the
Department of Land and Natural Re-
sources; Alexander & Baldwin, Inc.;
East Maui Irrigation Co.; Maui Land &
Pineapple Co., Inc.; County of Maui,
Department of Water Supply; Hawaii
Farm Bureau Federation, Appellees–Ap-
pellees.

Maui Tomorrow, formally known as
Maui Tomorrow Foundation, Inc.,
and its supporters, Appellant,

v.

State of Hawai'i; Board of Land and Nat-
ural Resources of the State of Hawai'i;
Department of Land and Natural Re-
sources of the State of Hawai'i; Peter T.
Young, in his official capacity as Chair-
person of the Board of Land and Natu-

ral Resources and the Director of the
Department of Land and Natural Re-
sources; Alexander & Baldwin, Inc.;
East Maui Irrigation Co.; Maui Land &
Pineapple Co., Inc.; County of Maui,
Department of Water Supply; Hawaii
Farm Bureau Federation, Appellees.

Na Moku 'Aupuni O Ko'Olau Hui; Bea-
trice Kekahuna; Marjorie Wallett; Eliz-
abeth Lapenia, and Maui Tomorrow, Ap-
pellants–Appellees,

v.

Alexander & Baldwin, Inc., and
East Maui Irrigation Company,
Limited, Appellees–Appellants,

and

State of Hawai'i; Board of Land and Nat-
ural Resources of the State of Hawai'i;
Department of Land and Natural Re-
sources of the State of Hawai'i; Peter T.
Young, in his official capacity as Chair-
person of the Board of Land and Natu-
ral Resources and the Director of the
Department of Land and Natural Re-
sources; Maui Land & Pineapple Co.,
Inc.; County of Maui, Department of
Water Supply; Hawaii Farm Bureau
Federation, Appellees–Appellees.

Native Hawaiian Legal Corporation,
Party in Interest–Appellee.

(Civ.Nos. 26404, 26623, 03–
1–0289, 03–1–0292).

Supreme Court of Hawai'i.

April 5, 2006.

Alan T. Murakami and Moses K.N. Haia III, Honolulu, (of Native Hawaiian Legal Corporation), On the briefs, for Appellants–Appellants/Appellees Beatrice Kekahuna, Marjorie Wallett, and Na Moku Aupuni O Ko olau Hui.

Linda L.W. Chow, Deputy Attorney General, On the briefs, for Appellees–Appellees State of Hawai'i, Board of Land and Natural Resources, Department of Land and Natural Resources and Peter T. Young.

David Schulmeister and Elijah Yip, Honolulu, (of Cades Schutte LLP), On the briefs, for Appellees–Appellees/Appellants Alexander & Baldwin, Inc. and East Maui Irrigation Company, Limited.

Richard Kiefer and David B. Merchant (of Kiefer & Merchant LLC), On the briefs, for Appellee–Appellee Maui Land & Pineapple Co., Inc.

Robert H. Thomas, Honolulu, (of Damon Key Leong Kupchak Hastert), On the briefs, for Appellee–Appellee Hawaii Farm Bureau Federation.

Isaac Hall, Wailuku, On the briefs, for Appellant–Appellee Maui Tomorrow (no brief filed).

Jane E. Lovell Deputy Corporation Counsel, On the briefs, for Appellee–Appellee County of Maui (no brief filed).

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

This case arises out of the request for a contested case hearing made by Na Moku 'Aupuni O Ko'olau Hui, Beatrice Kekahuna, Marjorie Wallett, and Elizabeth Lapenia [hereinafter, collectively, Na Moku], contesting the application of Alexander & Baldwin (A & B) and East Maui Irrigation Company (EMI) [hereinafter, collectively, A & B/EMI] to the State of Hawai'i, Board of Land and Natural Resources (BLNR) for a long-term lease to continue to use water sourced in streams in East Maui on State-owned land and transport it through A & B/EMI's privately built and maintained irrigation system to various agricultural and domestic water uses across Maui. After the BLNR issued its "First Amended Findings of Fact and Conclusions of Law and Order" in favor of A & B/EMI, Na Moku initiated an agency appeal. The First Circuit Court[1] affirmed in part and reversed in part. The circuit court then (1) denied the motion of Na Moku and its counsel, Native Hawaiian Legal Corporation [hereinafter, NHLC], for attorneys' fees, costs and expenses, and (2) denied A & B/EMI's subsequent motions for (a) Hawai'i Rules of Civil Procedure (HRCP) Rule 11 (2000) sanctions against Na Moku and NHLC's counsel and (b) attorneys' fees.

On February 13, 2004, Na Moku filed a notice of appeal from the circuit court's January 16, 2004 order denying the motion for attorneys' fees, costs and expenses, which was docketed as SC No. 26404. On June 14, 2004, A & B/EMI filed a notice of appeal from the circuit court's (1) May 14, 2004 order denying A & B/EMI's motion for sanctions under HRCP Rule 11 and (2) May 14, 2004 order denying A & B/EMI's motion for attorneys' fees, which was docketed as SC No. 26623. On February 7, 2006, the two appeals were consolidated under SC No. 26404.

Based on the following, we affirm the January 16, 2004 and May 14, 2004 orders of the circuit court.

## I. BACKGROUND

For the past 120 years, EMI, a subsidiary of A & B, has owned and operated a ditch system that diverts surface water emanating in part from State lands in East Maui, and transports it to Central and Upcountry Maui for agricultural, domestic, and other purposes. A & B/EMI have obtained the water from the State lands pursuant to water leases at four license areas, identified as Honomanu, Huelo, Ke'anae, and Nahiku, which were issued by the State and its predecessors. Since the expiration of the original lease term for these four license areas, the State of Hawai'i, through the BLNR, the Department of Land and Natural Resources (DLNR), and Peter T. Young, in his official

1. The Honorable Eden Elizabeth Hifo presided over these matters.

capacity as Chairperson of the BLNR and the DLNR [hereinafter, collectively, the State], has issued year-to-year revocable permits to A & B and EMI.

On May 14, 2001, A & B/EMI filed an application with the BLNR [hereinafter, Application] seeking a thirty-year lease to continue to use water sourced in streams in East Maui and transport it through its irrigation system to various water uses across Maui. A & B/EMI also requested in the Application that the State continue to issue A & B and EMI yearly revocable permits pending issuance of the long-term lease.

Na Moku and Maui Tomorrow both requested a contested case hearing to challenge the legality of the Application's proposed disposition of public lands and resources. On June 22, 2001, the BLNR granted Na Moku's and Maui Tomorrow's requests. The following entities were granted standing to participate in the contested case proceedings: A & B/EMI; Maui Tomorrow; Na Moku; the County of Maui, Department of Water Supply; Maui Land & Pineapple Co., Inc. [hereinafter, MLP], which intervened to protect its use of water for farming operations; and Hawaii Farm Bureau Federation [hereinafter, HFBF], a not-for-profit organization, which intervened to represent the interests of Maui small and family farmers who are end users of a portion of the water from the A & B/EMI irrigation system.

In its written petition for a contested case, Na Moku raised eight issues:

1) Whether out of watershed transfers of water in a non-designated water management area and/or without a permit issued by the Commission on Water Resource Management [ (CWRM) ] permitting such use is prohibited.

2) *Whether the members of the Board of Land and Natural Resources violate their fiduciary duties pursuant to Section 5(f) of the Hawaii Admission Act, Section 213(i) of the Hawaiian Homes Commission Act, and their statutory duty pursuant to [Hawai'i Revised Statutes] [ (]HRS[)] § 171-33(5) by disposing of the Section 5(b) lands in Honomanu, Huelo, Ke'anae, and Nahiku without a proper appraisal and at less than their independently appraised fair-market value.*

3) Whether the Board of Land and Natural Resources has complied with the requirements set forth in HRS § 171-58(c).

4) Whether the Department of Land and Natural Resources has complied with the requirements set forth in HRS § 171-58(g).

5) Whether the Board of Land and Natural Resources must comply with the requirements of HRS Chapter § 343-5(b) and prepare and circulate for public review and comment an Environmental Assessment and an Environmental Impact Statement prior to any disposition of water from streams within the Honomanu, Huelo, Ke'anae, and Nahiku license areas.

6) Whether the *diversion of water from East Maui streams within the Honomanu, Huelo, Ke'anae, and Nahiku license areas violates Petitioners['] constitutionally protected traditional and customary native Hawaiian rights* that include, but are not limited to, the gathering of native stream fauna dependent upon the protection of instream flows.

7) Whether appurtenant water rights are abridged by the diversion of water from certain East Maui streams within the Honomanu, Huelo, Ke'anae, and Nahiku license areas.

8) *Whether the Board of Land and Natural Resources has a legal obligation to determine the extent of constitutionally protected traditional and customary native Hawaiian rights and appurtenant water rights* within the Honomanu, Huelo, Ke'anae, and Nahiku license areas before it may allow water to be diverted from streams within these areas.

(Emphases added.).

Based on the written submissions of the parties and oral argument presented on October 21, 2002, the BLNR hearing officer issued his "Proposed Findings of Fact, Conclusions of Law, and Recommended Order" dated November 8, 2002. On November 15,

2002, the BLNR heard oral arguments on the hearing officer's recommended order and issued its "Findings of Facts and Conclusions of Law and Order" on January 13, 2003, and its "First Amended Findings of Facts and Conclusions of Law and Order" on January 24, 2003 [hereinafter, collectively, BLNR Decision and Order], which adopted the hearing officer's "Proposed Findings of Fact, Conclusions.of Law, and Recommended Order."

With respect to Na Moku's first issue, the BLNR Decision and Order stated, in pertinent part:

Upon determination that it would be in the best interest of the State, BLNR may enter into a lease of water emanating from State lands for transfer outside of the watershed of origin provided that such lease is issued in accordance with the procedures set forth in HRS Chapter 171 and provides that all diversions of stream water shall remain subject to the Interim Instream Flow Standards ("IIFS") set by CWRM, and to any judgment of a court of competent jurisdiction establishing appurtenant or riparian rights in favor of downstream users.

With respect to Na Moku's fifth issue, the BLNR determined that an environmental assessment was not required prior to its granting of a long-term lease.

With respect to Na Moku's sixth, seventh, and eighth issues, the BLNR stated, in relevant part:

4. The jurisdictional power to adjudicate claims to appurtenant rights lies with the circuit courts and with the CWRM, but not with the BLNR.

5. The State of Hawaii has a duty to protect the reasonable exercise of customarily and traditionally exercised rights of Hawaiians to the extent feasible pursuant to Article XII, Section 7 of the Hawaii Constitution.

6. In the specific case of determining the minimum instream flow standards necessary to protect, to the extent feasible, traditional and customary practices of na-

tive Hawaiians, the CWRM is the appropriate agency to fulfill the State's duty.

. . . .

8. So long as the proposed disposition of water by the BLNR is made subject to the instream flow standards established by the CWRM, the BLNR has no duty to perform its own parallel investigation with regard to the minimum, instream flow standards necessary to protect, to the extent feasible, traditional and customary practices of native Hawaiians.

The BLNR's Decision and Order did not decide Na Moku's second, third, and fourth issues regarding whether section 5(f) of the Admission Act, section 213(i) of the Hawaiian Homes Commission Act (HHCA), or HRS chapter 171 were violated.

On February 7, 2003, Na Moku filed an agency appeal of the BLNR's Decision and Order in the Circuit Court of the First Circuit (Civil No. 03–1–0292).[2] Specifically, Na Moku asserted, in relevant part:

First Claim for Relief: Violation of Due Process . . . . [T]he BLNR action deprived Appellants Na Moku, et al. of their rights to procedural due process.

Second Claim for Relief: Unsanctioned Out of Watershed Diversions

48. The only lawful means to divert and transport water outside of its watershed of origin is via a water use permit issued by CWRM. HRS 174C–49(c). Before that may occur, the relevant watersheds must be designated water management areas pursuant to HRS 174C–41.

49. Since there has been no designation, there can be no permit authorizing A & B's and EMI's out of watershed diversions where the diversion would be contrary to the public trust doctrine and the restriction on transporting water associated with appurtenant rights. A & B's and EMI's out of watershed transfers are, therefore, unsanctioned. Unsanctioned transfers may be enjoined. *Robinson v. Ariyoshi*, 65 Haw. 641, 648, [658 P2d 287] (1982).

(Civil No. 03–1–0289).

---

2. The appeal was consolidated with Maui Tomorrow's agency appeal of the same BLNR order

50. Under Article XII, section 7 of the Hawai'i Constitution,

The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

51. This provision places an affirmative duty on the State and its agencies to preserve and protect traditional and customary native Hawaiian rights, and confers upon the State and its agencies "the power to protect these rights and to prevent any interference with the exercise of these rights." *Ka Pa'akai v. Land Use Commission*, 94 Hawai'i 31, 45, 7 P.3d 1068, 1082 (2000) ("*Ka Pa'akai*"), citing Stand. Comm. Rep. No. 57, in 1 Proceedings of the Constitutional Convention of 1978, at 639 (1980). See also *Public Access Shoreline Hawaii v. County of Hawaii*, 79 Hawai'i 425, 437, 903 P.2d 1246, 1250, (1995) (hereafter, "*PASH*"); HRS §§ 1–1 and 7–1 (providing two additional sources from which gathering rights are derived).

52. These diversions have severely affected Appellants Na Moku, et al.'s constitutionally protected rights to exercise traditional and customary native Hawaiian gathering and other rights associated with streams and streamflow.

53. The BLNR's approval of unsanctioned out of watershed diversions violates Applicants Na Moku, et al.'s constitutionally protected rights.

*Third Claim for Relief: Violation of H.R.S. Chapter 343 and [Hawai'i Administrative Rules] [ (]H.A.R.[)] § 11–200–8(b)*

. . . . HAR § 11–200–8(b) applies and renders an exemption under HAR § 11–200–8(a) inapplicable. Accordingly, the BLNR is required to prepare an environmental assessment for the subject diversions pursuant to H.R.S. § 343–5(a).

*Fourth Claim for Relief: Failure to Perform Analysis of Native Hawaiian Rights*

65. While the State's power to regulate the exercise of Hawaiian rights ". . . necessarily allows the State to permit development that interferes with such rights in certain circumstances . . . . [n]evertheless, the State is obligated to protect the reasonable exercise of customarily and traditionally exercised rights of Hawaiians to the extent feasible." *PASH*, 79 Hawai'i at 450 n. 43, 903 P.2d at 1271 n. 43 (emphasis added). Therefore, state agencies, including the BLNR, "may not act without **independently** considering the effect of their actions on Hawaiian traditions and practices." *Ka Pa'akai*, 94 Haw [ai'i] at 46, 7 P.3d at 1083, citing *PASH*, 79 Haw [ai'i] at 437, 903 P.2d at 1258. (Emphasis added.)

66. All state agencies, including the BLNR in this instance, must make specific findings and conclusions as to the following: (1) the identity and scope of "valued cultural, historical, or natural resources" in the petition area, including the extent to which traditional and customary native Hawaiian rights are exercised in the petition area; (2) the extent to which those resources—including traditional and customary native Hawaiian rights—will be affected or impaired by the proposed action; and (3) the feasible action, if any, to be taken by the [agency] to reasonably protect native Hawaiian rights if they are found to exist. *Ka Pa'akai*, 94 Haw [ai'i] at 47, [7 P.3d 1068].

67. The BLNR, as a state agency, has an independent constitutional duty to identify the practices that could be affected by the proposed action, assess the impact of the proposed action on those practices, and design reasonable protective measures before it acts on this proposal.

68. Without this analysis, the BLNR must withhold granting of any permits to transport water from East Maui.

69. Absent the information resulting from this analysis, the BLNR has no way of determining whether approval of either proposal constitutes a breach of its duty to protect the reasonable exercise of traditional and customary native Hawaiian rights because there has not been a determination of such rights and the amount of

water that may be diverted from East Maui streams without abridging such rights.

70. By deferring any analysis on the impact of the diversion on traditional and customary native Hawaiian rights to some later determination of those rights by another agency violates Appellants Na Moku, et al.['s] constitutional rights. To act in the absence of this analysis is a breach of the BLNR's duty, as a state agency, to protect such rights. Accordingly, the BLNR must on its own and prior to taking any action on the proposal, identify the practices that could be affected by the proposed action, assess the impact of the proposed action on those practices, and design reasonable protective measures.

(Italics and bold in original; some alterations in original and some added; footnotes omitted.). The circuit court heard oral arguments on September 17, 2003.

On October 10, 2003, the circuit court entered its "Order Affirming in Part and Reversing in Part State of Hawaii Board of Land and Natural Resources' Findings of Fact and Conclusions of Law and Order, Dated January 10, 2003; Amended January 24, 2003 Regarding Petition Contesting Application for Long Term Disposition of Water Licenses and Issuance of Interim Revocable Permits at Honomanu, Keanae, Nahiku, and Huelo, Maui."

With respect to Na Moku's first claim that the BLNR violated Na Moku's right to due process, the circuit court found in favor of the BLNR. With respect to Na Moku's second and fourth claims, the circuit court stated:

**Transfers of Water.** The Court initially concludes that the Water Code, HRS chapter 174C, does not prohibit the transfer of water outside the watershed of origin in an area that the Commission on Water Resources Management has not designated a water management area pursuant to HRS § 174C–48. There is no dispute that the area of East Maui that is the subject of the water lease is not a water management area.

Furthermore, there is little dispute that the transfer of water out of the watershed

of origin is not absolutely prohibited under the common law of Hawai'i. *Robinson v. Ariyoshi,* 65 Haw. 641, 658 P.2d 287 (1982) ("Robinson"). However, Robinson allows these transfers only when it can be demonstrated that to do so would not be injurious to others with rights to water.

In addition Conclusion of Law No. 3 of the First Amended Findings of Fact and Conclusions of Law (at page 7) acknowledges that, upon a determination that it would be in the best interest of the state, the BLNR may enter into a lease of water emanating from State lands for transfer outside of the watershed of origin, provided that the lease is issued in accordance with the procedures set forth in HRS chapter 171 and a provision that all diversions of stream water shall remain subject to the interim in-stream flow standards set by the CWRM and any judgment of a court of competent jurisdiction establishing appurtenant or riparian rights in favor of downstream users.

This conclusion of law means that the BLNR could meet and decide whether it is in the best interest of the state to lease whatever is excess without knowing what is "excess." Accordingly, this Court concludes that this conclusion of law is fatally flawed, and is inconsistent with the common law and with the suggestion that one could ever determine the best interest of the state absent data on what is "excess."

**Native Rights and the Public Trust.** This Court concludes that its analysis of tradition[al] and customary native Hawaiian practices and appurtenant rights and the public trust obligations *emanating from the Hawai'i Constitution and case decisions construing it* dovetails into the issue of out of watershed transfers. Accordingly, this court also concludes that it was erroneous for the BLNR to conclude that it could begin the process to put out to lease the water that could affect these rights without first making a determination as to whether it would be in the state's best interest in light of the lack of knowledge or information of what the CWRM will ultimately determine in the future, notwithstanding Appellees' argument that

the CWRM has exclusive jurisdiction over determining what amount of water must flow through the streams which all agencies have a duty to protect.

This Court finds no error in the BLNR conclusion that the BLNR is not required to conduct a parallel investigation. In the process of determining whether there is any surplus water which would be in the best interest of the state to lease for 30 years, the BLNR is entitled to rely on and use any determination of the CWRM to establish instream flow standards, whether as a result of Appellant Na Moku Aupuni O Ko'olau's filing of 27 petitions to amend interim instream flow standards, or any other request, or pursuant to CWRM's exercise of its statutory obligations to protect riparian rights, native Hawaiian rights, or in the discharge of any of its other obligations. However, if there is no CWRM determination to amend instream flow standards, then any BLNR investigation it could itself perform on theses issues would not be parallel to the CWRM. If the BLNR believes it does not have the requisite expertise to investigate, then it should wait until the CWRM has acted or make its own application to establish instream flows reflecting the diversion it proposes to make, before authorizing the diversion.

In any case, given the provisions of the Hawai'i Constitution, neither the BLNR nor this Court can rubber-stamp any determination of the CWRM. Rather, the BLNR is obligated to make a truly independent investigation as to whether it's in the state's best interest to authorize the diversion of water from East Maui streams.

. . . .

Therefore, this Court REVERSES Paragraph[s] 3 and 5 of the Order contained in the BLNR decision and any related conclusion of law.

(Emphasis added.).

With respect to Na Moku's third claim for relief, the circuit court found that an environmental assessment must be prepared. The circuit court dismissed with prejudice all oth-er claims, counterclaims, or cross-claims. Final judgment was entered on October 10, 2003, and a "First Amended Final Judgment" was filed on November 4, 2003. Notably, the circuit court did not mention the Admission Act or the HHCA.

On November 18, 2003, Na Moku [3] and NHLC, through their special counsel, Paul, Johnson, Park & Niles, filed a "Motion for Attorneys' Fees, Costs and Expenses" pursuant to 42 U.S.C. § 1988 (2000), asserting that they were "entitled *of right* to an award of reasonable attorneys' fees and costs in this administrative appeal and the administrative proceedings below because they have prevailed on claims grounded on their civil rights under federal law." (Emphasis in original.). In a footnote, they asserted alternatively that they were entitled to attorneys' fees under the private attorney general doctrine. They asked for a total of $241,084.12. On December 16, 2003, the circuit court held a hearing on the motion and orally denied it, stating that "since it's . . . clear that the 1983 action was not litigated below and wasn't discussed in the appeal, I do not believe that this court has authority to award fees." The court further denied Na Moku and NHLC's request, stating:

> I don't think that under [HRCP] Rule 72 and that agency appeal mechanism that it was contemplated that people most of whom are pro se are going to have to pay the costs of the attorneys who are opposing them if they don't prevail or that they should be able to collect their otherwise minimal costs. . . . And, I just think that the better rule for agency appeals is you don't get fees and costs. You already have a expedited tailored form [sic] in which to litigate and an expedited circuit court limited form [sic] under [HRS § ] 91–14 G.

The court did not mention any basis for denying fees based on the private attorney general doctrine. On January 16, 2004, the circuit court entered an order denying Na Moku and NHLC's motion. On February 13, 2004, Na Moku filed a timely appeal, docketed as SC No. 26404.

On February 2, 2004, A & B/EMI filed a Rule 11 motion to impose sanctions against

**3.** Elizabeth Lapenia was not listed as a party to this motion.

"counsel for [Na Moku] for bringing Na Moku and [NHLC]'s Motion for Attorneys' Fees, Costs and Expenses" asserting that the motion was "presented for an improper purpose, and the legal contentions contained therein are utterly frivolous." That same day, A & B/EMI also filed a motion for attorneys' fees, asserting that such an award was warranted pursuant to 42 U.S.C. § 1988 because Na Moku's civil rights claim was "meritless and without foundation[.]" At a hearing on April 7, 2004, the circuit court orally denied the Rule 11 motion, stating:

... I think the idea of good faith is not that you absolutely prevail, but that you can make an argument in good faith that would push the decision maker passed [sic] the point of current law or current understanding.

So I am going to deny this motion because I think it does not meet what is the really high bar for Rule 11.

On May 14, 2004, the circuit court entered two orders denying both motions. On June 14, 2004, A & B/EMI filed a timely appeal, docketed as SC No. 26623.

## II. *STANDARDS OF REVIEW*

### A. *Award Of Attorneys' Fees*

■ "This court reviews the denial and granting of attorney's fees under the abuse of discretion standard." *Chun v. Bd. of Trs. of Employees' Ret. Sys. of State of Hawai'i*, 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005) (citations, brackets, ellipses, and quotation signals omitted).

■ "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 89 Hawai'i 292, 299, 972 P.2d 295, 302 (1999) (quoting *Lepere v. United Pub. Workers*, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)) (quotation marks omitted). In other words, "[a]n abuse of

discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Canalez*, 89 Hawai'i at 299, 972 P.2d at 302 (quoting *State ex rel. Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 54, 919 P.2d 294, 316 (1996)) (quotation marks omitted; alteration in original).

### B. *Rule 11 Sanctions*

■ "All aspects of a HRCP Rule 11 determination should be reviewed under the abuse of discretion standard." *Gap v. Puna Geothermal Venture*, 106 Hawai'i 325, 331, 104 P.3d 912, 918 (2004) (citations and quotation marks omitted).

## III. *DISCUSSION*

### A. *The Circuit Court Did Not Abuse Its Discretion by Refusing to Grant Attorneys' Fees to Na Moku and NHLC.*

#### 1. Na Moku is Not Entitled to Attorneys' Fees Under 42 U.S.C. § 1988.

■ Na Moku asserts that the circuit court abused its discretion by denying Na Moku's motion for fees, costs and expenses because Na Moku is entitled of right to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 for its successful appeal of the BLNR's Decision and Order. We disagree.

Section 1988(b) provides, in relevant part, that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" [4]

This court has recognized that claims to enforce section 5(f) of the Admission Act and the HHCA (via the Admission Act) are section 1983 claims. *Aged Hawaiians v. Ha-*

---

4. 42 U.S.C. § 1983 (1996), entitled "Civil action for deprivation of rights" provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*waiian Homes Comm'n,* 78 Hawai'i 192, 205–07, 891 P.2d 279, 292–94 (1995). *See also, Price v. State,* 764 F.2d 623, 628 (9th Cir. 1985) ("We have recently held that § 5(f) of the Admission Act creates a federal 'right' enforceable under 42 U.S.C. § 1983." (Citing *Keaukaha–Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n,* [hereinafter, *Keaukaha II* ], 739 F.2d 1467, 1472 (9th Cir.1984).)). Na Moku, however, did not assert a claim for relief in the circuit court to enforce either section 5(f) or the HHCA.

Section 5(f) of the Admission Act provides:

The lands granted to the State of Hawaii by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or other disposition of any such lands and the income therefrom, *shall be held by said State as a public trust [ (1) ] for the support of the public schools and other public educational institutions, [ (2) ] for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, [ (3) ] for the development of farm and home ownership on as widespread a basis as possible[,] [ (4) ] for the making of public improvements, and [ (5) ] for the provision of lands for public use.* Such lands, proceeds, and income shall be managed and disposed of *for one or more of the foregoing purposes* in such manner as the constitution and laws of said Sate may provide, and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States. (Emphases added.). In sum, section 5(f) prohibits the State from using the land or proceeds and income from the lease of water rights to such land for a purpose other than those five enumerated above.

Certainly, as the circuit court found, the BLNR breached its duty to analyze "tradition[al] and customary native Hawaiian practices and appurtenant rights and the public trust obligations emanating from the *Hawai'i Constitution and case decisions construing it.*" However, nothing in Na Moku's appeal to the circuit court could be construed as alleging that any of the Appellees used the land or proceeds and income therefrom for a purpose other than the five enumerated above, thereby breaching the trust obligation under the *Admission Act;* nor could anything in the circuit court's opinion be construed as finding any such breach. Therefore, Na Moku did not assert a claim to enforce section 5(f) of the Admission Act in the circuit court.

Na Moku also contends that it asserted a claim based on the HHCA. The only section of the HHCA that Na Moku has ever asserted that the BLNR breached is section 213(i). This section provides, in relevant part:

(i) Native Hawaiian rehabilitation fund. Pursuant to Article XII, Section 1, of the State Constitution, thirty per cent of the state receipts, derived from lands previously cultivated as sugarcane lands under any other provision of law and from water licenses, shall be deposited into this fund. The department shall use this money solely for the rehabilitation of native Hawaiians which shall include, but not be limited to, the educational, economic, political, social, and cultural processes by which the general welfare and conditions of native Hawaiians are thereby improved and perpetuated.

Na Moku fails to explain how the BLNR could have violated this section, inasmuch as Na Moku conceded in its opening brief to the circuit court that one of the "issues that remain for disposition in this contested case include ... whether the members of the BLNR violate their fiduciary duties pursuant to the public trust doctrine, Section 5(f) of the Hawai'i Admission Act [and] Section 213(i) of the [HHCA.]" Because these issues "remain[ed] for disposition" by the BLNR, they were not before the circuit court and the circuit court could therefore not decide such issues in favor of Na Moku. Assuming, *arguendo,* that such issues were before the circuit court, Na Moku fails to point to any finding of the circuit court that could support its contention that any of the Appellees breached the HHCA such that Na Moku is the "prevailing" party.

Accordingly, Na Moku has not asserted, nor prevailed on, a section 1983 claim such

that it and NHLC are entitled to seek an award of attorneys' fees pursuant to section 1988.[5]

### 2. Na Moku is Not Entitled to Attorneys' Fees, Costs, and Expenses Under the Private Attorney General Doctrine.

■ Na Moku next asserts that the circuit court abused its discretion in determining that they are not entitled to reasonable attorneys' fees and costs pursuant to the private attorney general doctrine. We disagree.

We first considered the private attorney general doctrine in *In re Water Use Permit Applications,* 96 Hawai'i 27, 25 P.3d 802 (2001) [hereinafter, *Waiahole II* ]. *Waiahole II* arose from a contested hearing related to the Waiahole Ditch System in which the CWRM considered petitions to amend interim instream flow standards, water use permit applications for various leeward offstream purposes, and water reservation petitions for both instream and offstream uses. *In re Water Use Permit Applications,* 94 Hawai'i 97, 110, 9 P.3d 409, 422 (2000) [hereinafter, *Waiahole I* ]. The CWRM entered an order apportioning water for various agricultural, leeward offstream, and nonagricultural uses, established a non-permitted ground water buffer, and denied various water use permits. *Id.* at 116–17, 9 P.3d at 428–29. We affirmed in part and reversed in part, *id.* at 189–90, 9 P.3d at 501–02, and soon thereafter, some of the parties, referred to as the Windward Parties, filed motions for attorneys' fees under the private attorney general doctrine. *Waiahole II,* 96 Hawai'i at 28, 25 P.3d at 803.

We stated, in *Waiahole II,* that the private attorney general doctrine

> is an equitable rule that allows courts in their discretion to award attorneys' fees to plaintiffs who have vindicated important public rights. Courts applying this doctrine consider three basic factors: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on

the plaintiff, (3) the number of people standing to benefit from the decision.

*Id.* at 29, 25 P.3d at 804 (citations and quotation marks omitted). We held that the doctrine did not apply under the facts of that case, but did not foreclose application of the doctrine in a future case. *Id.* at 32, 25 P.3d at 807. Although Na Moku asserts that this is such a case, we disagree.

In *Waiahole II,* we stated that although the first and third prongs of the test were satisfied, the second prong, "the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff," was "less convincing," thereby preventing the doctrine from being applicable. *Id.* at 31, 25 P.3d at 806. We explained:

> In other cases, the plaintiffs served as the sole representative of the vindicated public interest. The government either abandoned, or actively opposed, the plaintiff's cause. Here, the Windward Parties represented one of many competing public and private interests in an adversarial proceeding before the governmental body designated by constitution and statute as the primary representative of the people with respect to water resources, the Commission on Water Resources Management. . . . In sum, unlike other cases, in which the plaintiffs single-handedly challenged a previously established government law or policy, in this case, the Windward Parties challenged the decision of a tribunal in an adversarial proceeding not contesting any action or policy of the government. The Windward Parties cite no case in which attorneys' fees were awarded in an adversarial proceeding against a tribunal and the losing parties and in favor of the prevailing party, based on the reversal of the tribunal's decision on appeal. Nor does such a rule appear prudent from a policy standpoint, where public tribunals in adversarial settings must invariably consider and weigh various "public interests."

*Id.* at 31–32, 25 P.3d at 806–07 (internal citations omitted).

5. Because we hold that Na Moku is not entitled to seek fees under section 1988 for the foregoing reasons, we need not address Appellees' additional arguments that they are not persons acting under color of state law for purposes of section 1983.

The instant case is distinguishable from *Waiahole II* in one aspect inasmuch as, in *Waiahole II*, the CWRM apportioned water rights between various public and private interests, and the Windward Parties were contesting the apportionment and not any policy of the government. In the present case, on the other hand, Na Moku was not contesting apportionment, but was contesting a policy of the BLNR to lease water rights without performing the required analysis. As such, that point of the *Waiahole II* analysis is in favor of Na Moku. The other points, however, are not.

First, we agree with the State that it did not "abandon" or "actively oppose" Na Moku's cause. Rather, the BLNR recognized the State's "duty to protect the reasonable exercise of customarily and traditionally exercised rights of Hawaiians to the extent feasible pursuant to Article XII, Section 7 of the Hawaii Constitution[,]" but stated that the CWRM, rather than itself, was the appropriate agency to fulfill the State's duty. The BLNR recognized that "the proposed disposition of water by the BLNR is made subject to the instream flow standards established by the CWRM[.]" Thus, the State was not abandoning its duty; rather, the BLNR was under the impression, although erroneous, that the duty was to be carried out by another agency.

Additionally, the instant case, as in *Waiahole II*, involves an appeal from the decision of a tribunal in an adversarial proceeding, and the circuit court "made no rulings regarding the ultimate disposition of water resources, but simply remanded the matter ... for further findings and conclusions." *Waiahole II*, 96 Hawai'i at 32, 25 P.3d at 807. Like the Windward Parties, Na Moku cites no cases in which fees were awarded against a tribunal and the losing parties based on the reversal of the tribunal's decision on appeal.

Thus, the circuit court did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to the substantial detriment of a party litigant in refusing to grant Na Moku and NHLC's motion for attorneys' fees, costs, and expenses.[6]

B. *The Circuit Court Did Not Abuse Its Discretion by Refusing to Sanction Na Moku and NHLC's Counsel.*

A & B/EMI contend that the circuit court abused its discretion when it denied A & B/EMI's Rule 11 motion because Na Moku and NHLC's fee motion argued frivolously that (1) Na Moku was a prevailing party on a federal claim; (2) Na Moku may recover fees from private parties such as A & B/EMI under 42 U.S.C. § 1988; (3) Na Moku may recover fees under the private attorney general doctrine; and (4) the fee motion was frivolous in seeking recovery of an excessive amount of fees and costs.[7] For the reasons set forth below, we hold that the circuit court did not abuse its discretion in refusing to impose Rule 11 sanctions.

HRCP Rule 11 provides in relevant part:

**(b) Representations to Court.** By presenting to the court ... a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

. . . .

---

6. Because we hold that the circuit court did not abuse its discretion in refusing to award fees, we need not address Na Moku's second point on appeal regarding the "other considerations" that outweigh the circuit court's concern for the chilling effect an award in this case would have on other HRS § 91–14 appeals. Nor do we address Appellees' arguments that the fees requested were "grossly excessive."

7. A & B/EMI alternatively argue that if Na Moku asserted a claim under section 1983, the claim was meritless, and thus, the circuit court abused its discretion when it denied A & B/EMI's motion for fees under section 1988. Because we hold that Na Moku has not asserted a section 1983 claim, it is unnecessary to address this assertion.

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Although, as set forth in Section III.A., *supra,* Na Moku and NHLC are not entitled to attorneys' fees under section 1988 or the private attorney general doctrine, we hold that the circuit court did not abuse its discretion in refusing to sanction them for filing those motions. Na Moku and NHLC's argument for an award of fees under the private attorney general doctrine, although ultimately unsuccessful, was not frivolous given the *Waiahole II* Court's indication that this court could apply the doctrine in a future case. Additionally, although their argument for fees under section 1988 was tenuous, circuit courts are afforded a substantial degree of deference in awarding Rule 11 sanctions, and there is nothing in the record to indicate that the circuit court's refusal to impose sanctions in the instant case clearly exceeded the bounds of reason or evidenced a disregard

for rules or principles of law or practice to the parties' substantial detriment. *See In re Tax Appeal of Hawaiian Flour Mills,* 76 Hawai'i 1, 15, 868 P.2d 419, 433 (1994) ("Deployed on the front lines of litigation, the trial court 'is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence.'" (Citation omitted.)).[8]

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's: (1) January 16, 2004 order denying Na Moku and NHLC's motion for attorneys' fees, costs and expenses; (2) May 14, 2004 order denying A & B/EMI's motion for Rule 11 sanctions; and (3) May 14, 2004 order denying A & B/EMI's motion for attorneys' fees.

---

**8.** Because we hold that the circuit court did not abuse its discretion in refusing to impose sanctions, it is unnecessary to address Na Moku's assertion that A & B/EMI's Rule 11 claims are flawed in that A & B/EMI failed to name, as a party to this appeal, the attorney of the law firm of Paul, Johnson, Park & Niles who signed Na Moku and NHLC's motion for fees.