293 P.3d 141

In the Matter of the Application Of HONOLULU CONSTRUCTION AND DRAYING COMPANY, LIMITED, to register and confirm title to land situate at Honolulu, City and County of Honolulu, State of Hawai'i Aloha Tower Development Corporation, Petitioner,

v.

STATE of Hawai'i, Department of Land and Natural Resources, Trustees of the William G. Irwin Charity Foundation, Scenic Hawai'i, Inc., The Outdoor Circle, Historic Hawai'i Foundation, Hawai'i's Thousand Friends, Life Of The Land, William Olds, Jr. and Jane Olds Bogart, and Intervenor, City and County of Honolulu, Respondents,

and

Scenic Hawai'i, Inc., Respondent/Cross–Appellee,

v.

Aloha Tower Development Corporation, Petitioner/Cross–Appellant.

No. 30484.

Intermediate Court of Appeals of Hawai'i.

Dec. 19, 2012.

---

Deirdre Marie–Iha, Deputy Solicitor General, on the briefs, for Petitioner/Cross–Appellant, Aloha Tower Development Corp.

John T. Hoshibata, Rex Y. Fujichaku, Marguerite S. Nozaki, (Bronster Hoshibata), on the briefs, for Respondent/Cross–Appellee, Scenic Hawai'i, Inc.

FOLEY, Presiding Judge, FUJISE and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Petitioner–Appellant Aloha Tower Development Corporation (**ATDC**) appeals from a March 29, 2010 Final Judgment entered against ATDC by the Land Court.[1] In the Final Judgment, the Land Court, *inter alia,*

---

1. The Honorable Gary W.B. Chang presided.

awarded attorneys' fees and costs, in the amount of $135,637.69, against ATDC and in favor of Intervenor–Defendant–Appellee Scenic Hawai'i, Inc. (**Scenic Hawai'i**),[2] based on the private attorney general doctrine. As discussed below, we conclude that the Land Court erred in its application of the private attorney general doctrine to this case.

## I. BACKGROUND

### A. The Deed Restriction and Purported Waiver

On September 3, 1930, the Territory of Hawai'i (**Territory**) entered into an agreement with Helene Irwin Fagan (**Fagan**) and Honolulu Construction and Draying, Ltd. (**HC & D**), whereby: (1) HC & D agreed to sell the property at issue (**Property**)—which is today known as Irwin Memorial Park (**Irwin Park**)[3]—to Fagan for 2300 shares of common stock in Standard Oil Company of California; (2) Fagan agreed to donate the Property to the Territory; and (3) the Territory agreed to accept the donation, subject to restrictions and conditions, including that the Property would be maintained as a "public park to beautify the entrance to Honolulu Harbor." The deed restrictions and conditions stated that if any portion of the Property was ever abandoned as a public park, the Property would revert back to Fagan and "her heirs and assigns[.]"

On March 13, 1931, through Executive Order No. 472, the Territory set aside the Property as a public park and noted that the Territory owned the Property subject to the restrictions and conditions set forth in the deed from Fagan to the Territory. In 1939, the Territory and Fagan entered into a Supplemental Agreement "to permit the parking of vehicles of whatsoever nature, whether with or without the payment of a fee or fees ... on that portion of [Irwin] [P]ark now set aside for the parking of vehicles[.]"

In 1951, the Territory sent a letter to Fagan seeking a release of Fagan's restrictions on Irwin Park because plans to widen Nimitz Highway would encroach upon a portion of the Property. Fagan sent a reply in 1952, stating that she "agreed that the restrictive conditions contained in [the Irwin Park] deed will be withdrawn and cancelled."

In 1966, Fagan passed away.

In 1981, the Legislature enacted Hawaii Revised Statutes (**HRS**) Chapter 206J (2001 & Supp.2011), which created ATDC as an agency of the State, and which provides that "Irwin Memorial Park shall be retained as a public park subject to the reservations and conditions set forth in the deed of [ ] Fagan to the Territory[.]" HRS § 206J–6(c). In 1999, Irwin Park was placed on the Hawai'i Register of Historic Places.

### B. The Land Court Proceedings

On May 15, 2001, ATDC, as the ground lessee of Irwin Park, filed a Petition to modify and amend Land Court Transfer Certificate of Title No. 310,513, pursuant to HRS § 501–196 (2006), in order to expunge the deed restrictions on Irwin Park (**Petition**). Although not stated in the Petition, it appears that ATDC was pursuing this relief to facilitate the construction of a multi-story parking structure in Irwin Park. Respondents to the Petition included William L. Olds, Jr. (**Olds**), and Jane Olds Bogart (**Bogart**), the grandchildren and natural heirs of Fagan (collectively, **Fagan Heirs**), and the Trustees of the William G. Irwin Family Charity Foundation (**Foundation**),[4] which was named as the residual beneficiary under Fagan's Will.

On June 8, 2001, before the Fagan Heirs' and the Foundation's responses to the Petition were filed, Scenic Hawai'i moved to intervene, seeking to represent the general public's interests, asserting that (1) the State, represented by the Department of the Attor-

---

**2.** "Scenic Hawai'i" herein refers to the five organizations that were jointly represented during these proceedings: Scenic Hawai'i, Inc., The Outdoor Circle, Historic Hawai'i Foundation, Hawai'i's Thousand Friends, and Life of the Land.

**3.** Irwin Park "is located mauka of the Aloha Tower Marketplace bounded by North Nimitz Highway, Fort Street, Bishop Street and Aloha Tower Drive."

**4.** In 2001, the Trustees of the Foundation were Olds, Bogart, William L. Olds, III, George T. Cronin, and Anthony O. Zanze.

ney General, would not adequately represent the public's interest because ATDC, although represented by private counsel, and other State agencies, supported the development of Irwin Park, and (2) the Fagan Heirs had not (yet) been served and appeared to defend the restrictive covenant. Scenic Hawai'i contended that its interests involved "questions of law and fact that are inherently essential elements of the petition", including:

'Was and is there a legal waiver by Mrs. Fagan of the restrictive covenant'? As to the evidence of a 'waiver' suggested by [ATDC], is it authentic? Is the signature that of Mrs. Fagan? Was the signature witnessed or notarized? Was the purported 'waiver' conditioned upon a land exchange involving Maui land? If so, was the land exchange ever consummated? What were the intentions of Mrs. Fagan with respect to the use, preservation and future reversion of Irwin Memorial Park? Do the living heirs of Mrs. Fagan have any information concerning Mrs. Fagan's intentions? If so, what testimony or evidence might they present?

(Footnotes omitted.)

As noted above, the Fagan Heirs and the Foundation did in fact (separately) respond to the Petition, vigorously opposing the requested relief based on HRS § 206J–6(c), Executive Order No. 472, which was recorded both as a Land Court Document and in the Bureau of Conveyances, the unwaived and unreleased reservations and conditions in the Fagan deed, and other grounds. In addition, the City and County of Honolulu (**City**) moved to intervene, asserting, *inter alia*, that "the City has an obligation, arguably a responsibility, to take actions which substantially advance legitimate public interests including protecting and preserving open space and the health and welfare to the public that open spaces in urban areas afford", that "removal of the restrictive covenants would eliminate the City's interest in preserving the park", and that "disposition of this matter without the City's involvement would greatly impede its ability to protect the public's interest in preserving open space in a high urban area like downtown Honolulu." (Format altered.) The City's motion to intervene

was granted. As the owner of the Property and the lessor on the ground lease with ATDC, the State was joined as a necessary and indispensable party. The Department of Land and Natural Resources, which administers the State's public lands, was also joined.

After a non-jury trial, on December 12, 2002, the Land Court announced its ruling on ATDC's Petition, finding that Fagan neither waived the restrictive covenants burdening the Property nor gifted her reversionary interest in the Property. On that basis, the Petition was denied.

On August 28, 2008, Scenic Hawai'i filed a motion seeking attorneys' fees and costs based on the private attorney general doctrine.

On November 3, 2008, the Land Court entered its Findings of Fact, Conclusions of Law and Order, setting forth its ruling on the Petition.

After various additional submissions of the parties, and hearings on the matter, on June 26, 2009, the Land Court entered an order granting in part and denying in part Scenic Hawai'i's motion for fees and costs. Although the Land Court concluded that Scenic Hawai'i had satisfied the three-prong test requisite to the application of the private attorney general doctrine, it denied without prejudice any award of attorneys' fees due to issues related to the form of the billing entries submitted to the court. After a renewed motion, and further submissions of the parties, on February 24, 2010, the Land Court granted Scenic Hawai'i's renewed request for attorneys' fees and ordered ATDC to pay Scenic Hawai'i a total of $135,637.69, inclusive of attorneys' fees and costs.

Final judgment was entered on March 29, 2010, and a notice of appeal was timely filed thereafter.

## II. *POINT OF ERROR*

ATDC raises a single point of error, contending that the Land Court erred when it granted an award of attorneys' fees to Scenic Hawai'i under the private attorney general doctrine.

III. *STANDARD OF REVIEW*

■ "The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." *Sierra Club v. Dep't of Transp. of State of Hawai'i*, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (*Sierra Club II*) (citations and brackets omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In other words, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Maui Tomorrow v. State of Hawai'i, Bd. of Land & Natural Res.*, 110 Hawai'i 234, 242, 131 P.3d 517, 525 (2006) (internal quotation marks, citations, and brackets omitted).

IV. *DISCUSSION*

A. *The Private Attorney General Doctrine*

The sole issue on appeal is whether the Land Court abused its discretion when it awarded attorneys' fees to Scenic Hawai'i.[5] The Hawai'i Supreme Court has often stated that "normally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses." *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263 (citation and brackets omitted). The supreme court has recognized various exceptions to this general rule, most commonly when authorized by statute, rule, or the parties' agreement, but also, in more limited circumstances, through judicially-created exceptions such as the private attorney general doctrine. *See id.; see also In re Water Use Permit Applications*, 96 Hawai'i 27, 29–30, 25 P.3d 802, 804–05 (2001) (*Waiahole II*) (noting various common law exceptions).

The Hawai'i Supreme Court twice considered, but did not apply, the private attorney general doctrine in *Waiahole II* and *Maui Tomorrow*, before expressly adopting and applying it in *Sierra Club II*. In the first case, *Waiahole II*, the supreme court highlighted the arguments in favor of and against adoption of the private attorney general doctrine and explained how courts have limited the application of the doctrine to exceptional cases in order to provide effective constraints on judicial discretion. *Waiahole II*, 96 Hawai'i at 30–31, 25 P.3d at 805–06. The court recited the California Supreme Court's summary of the arguments in favor of the private attorney general doctrine, including:

> In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. *These, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts.* Although there are within the executive branch of the government offices and institutions (exemplified by the Attorney General) whose function it is to represent the general public in such matters and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative. . . .

*Id.* at 30, 25 P.3d at 805 (citation omitted; emphasis added).

■ As stated by an Arizona court, "the purpose of the doctrine is to promote vindication of important public rights." *Id.* (citation omitted).

Other courts, including the United States Supreme Court, have rejected the private

---

5. None of the parties challenged the Land Court's decision on the merits of ATDC's petition, *i.e.*, the determination that Fagan did not relinquish, waive, or gift her reversionary interest in the Property, that the restrictions and conditions in the deed from Fagan to the Territory remain valid and in effect, and, therefore, that ATDC was not entitled to an expungement of the deed restrictions registered on Transfer Certificate of Title No. 310,513. Nor did any of the parties contend that the Land Court erred when

it determined that Scenic Hawai'i had standing and would be permitted to intervene in this Land Court registration matter. We also note that none of the State parties argued that sovereign immunity bars an award of attorneys' fees against a State agency herein (or attempted to distinguish this case from the statutory waiver of sovereign immunity that was held to apply in *Sierra Club II*). Therefore, we do not address these issues and this opinion should be construed accordingly.

attorney general doctrine, instead deferring to legislative bodies to specify statutory exceptions to the American Rule and raising concerns, including concerns about "[u]nbridled judicial authority to 'pick and choose' which plaintiffs and causes of action merit an award of attorney fees under the private attorney general doctrine[.]" *Id.* at 30–31, 25 P.3d at 805–06 (citations omitted). Given the Hawai'i Supreme Court's ultimate embrace of the private attorney general doctrine, the court presumably was satisfied with the proponents' responses to these criticisms, most importantly that "limiting the application of the doctrine to exceptional cases pursuant to the three-prong test articulated [below] provides effective constraints on judicial discretion." *Id.* at 31, 25 P.3d at 806 (citations omitted). The supreme court clearly embraced these constraints, as it utilized the three-prong test in *Sierra Club II,* as well as in *Waiahole II* and *Maui Tomorrow.*

The test adopted by the Hawai'i Supreme Court requires consideration of three factors: "(1) the strength or societal importance of the *public policy* vindicated by the litigation, (2) the *necessity for private enforcement* and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." *Sierra Club II,* 120 Hawai'i at 218, 202 P.3d at 1263 (citations omitted; emphasis added).

In *Waiahole II,* the supreme court held that the private attorney general doctrine did not apply because, although the first and third prongs of the doctrine's three-prong test were met, the second prong was not. *Waiahole II,* 96 Hawai'i at 31–32, 25 P.3d at 806–07. Regarding the first and third prongs, the court concluded, "this case involved constitutional rights of profound significance, and all of the citizens of the state, present and future, stood to benefit from the decision." *Id.* at 31, 25 P.3d at 806 (citation omitted). The court was not convinced, however, that the second prong was satisfied, explaining that, "[i]n other cases, the plaintiffs served as the sole representative of the vindicated public interest. The government either completely abandoned, or actively opposed, the plaintiff's cause." *Id.* (citations

omitted). In the three cases referenced by the supreme court, either: (1) "the agency charged with representing consumer interests made no appearance at all and [ ] the government opposed the plaintiffs on all issues"; (2) "no governmental agency could reasonably have been expected to represent the rights asserted by plaintiffs"; or (3) "the state's position [was] that it was obligated to defend the disputed statutes[.]" *Id.* (citations omitted). In *Waiahole II,* the parties seeking private-attorney-general fees, denominated the "Windward Parties," represented "one of many competing public and private interests[.]" *Id.* Significantly, the supreme court emphasized that "unlike other cases, in which the plaintiffs single-handedly challenged a previously established government law or policy, in this case, the Windward Parties challenged the decision of a tribunal in an adversarial *proceeding not contesting any action or policy of the government.*" *Id.* at 32, 25 P.3d at 807.

In *Maui Tomorrow,* although the supreme court recognized that, unlike the plaintiffs in *Waiahole II,* the plaintiffs therein were challenging a policy of the Board of Land and Natural Resources (**BLNR**), the supreme court rejected the applicability of the private attorney general doctrine based on its reasoning in *Waiahole II. Maui Tomorrow,* 110 Hawai'i at 244–45, 131 P.3d at 527–28. In *Maui Tomorrow,* the supreme court concluded that the requirements for the applicability of the private attorney general doctrine were not met because the State had not abandoned its duty to protect native Hawaiians' constitutionally-protected rights. *Id.* at 245, 131 P.3d at 528. Rather, the BLNR was under the mistaken impression that the duty was to be fulfilled by another State agency. *Id.* In addition, the court noted that, as in *Waiahole II,* the plaintiffs cited no cases in which fees were awarded under similar procedural circumstances. *Id.*

In *Sierra Club II,* the Hawai'i Supreme Court concluded that all three requirements for the application of the private attorney general doctrine were satisfied. *Sierra Club II,* 120 Hawai'i at 220, 202 P.3d at 1265. Regarding the first prong of the test, the supreme court rejected the State's argument

that no public policy was vindicated by Sierra Club's litigation, concluding instead that "this litigation is responsible for establishing the principle of procedural standing in environmental law in Hawai'i and clarifying the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS chapter 343." *Id.* Regarding the second prong, the supreme court stated that the plaintiffs therein "were *solely responsible* for challenging DOT's erroneous application of its responsibilities under HRS chapter 343." *Id.* (emphasis added). The court further noted that the State "exempted the Superferry project from the requirements of HRS chapter 343 without considering its secondary impacts on the environment[,]" thereby wholly abandoning "its duty to consider both the primary and secondary impacts of the Superferry project on the environment." *Id.* at 221, 202 P.3d at 1266. Finally, the supreme court agreed with the Sierra Club's argument that the third prong was satisfied because the court's decision in *Sierra Club I*[6] provided a public benefit in that it established procedural standing in environmental law cases and clarified the need to address secondary impacts in an HRS chapter 343 environmental review, and noted that its holding in *Sierra Club II* determined that Act 2[7] was unconstitutional.[8] *Id.*

### B. *Application of the Private Attorney General Doctrine*

In this case, ATDC argues that none of the requirements for the application of the private attorney general doctrine are met. Sce-

nic Hawai'i argues that all three prongs of the test have been met.

1. First prong: the strength or societal importance of the public policy vindicated by the litigation

ATDC argues, *inter alia*, that the Land Court's rejection of its petition to expunge certain deed restrictions is not a broad-based public policy vindication of the type necessary to invoke the private attorney general doctrine. Scenic Hawai'i argues that "[b]y holding ATDC and the State to its statutory duty to preserve this park for the public good," Scenic Hawai'i vindicated an important public policy. We are not convinced that ATDC's "statutory duty" was at issue in the Land Court proceedings.

The legal and factual issues before the Land Court concerned whether ATDC had demonstrated it was entitled to modify and amend Land Court Transfer Certificate of Title No. 310,513, pursuant to HRS § 501–196, to expunge the deed restrictions on the Property transferred from Fagan to the Territory. The public policy advocated by Scenic Hawai'i, however laudable, had no connection to or impact on the factual dispute regarding whether Fagan had waived the deed restrictions or gifted the reversionary interest. Put another way, even if the Land Court had adopted Scenic Hawai'i's argument that the State abandoned its public trust duty to protect the public's interest in maintaining the Property in its current configuration as a park, that position would not have been dispositive of the factual issue of whether Fagan waived the deed restrictions or gifted her reversionary interest to the Territory.[9] Moreover, whether the Petition

---

6. *Sierra Club I* refers to *Sierra Club v. Dep't of Transp. of State of Hawai'i*, 115 Hawai'i 299, 167 P.3d 292 (2007).

7. Act 2 refers to "A Bill for an Act Relating to Transportation" signed by Governor Linda Lingle on November 2, 2007. 2007 Haw. 2nd Spec. Sess. Laws Act 2, §§ 1–18 at 5–21.

8. In *Sierra Club II*, the supreme court further held that the private attorney general doctrine is subject to potential defenses and, therefore, continued its analysis. *Sierra Club II*, 120 Hawai'i at 221, 202 P.3d at 1266. As ATDC has raised no such defenses, we need not consider this aspect of the court's analysis in the present case.

9. The minutes of the March 27, 2009 hearing on Scenic Hawai'i's fees motion state that "the first prong is met because the public policy at stake is the public's right to maintain Irwin Park as a public memorial park in its current form instead of erecting a multiple level parking structure upon it." However, notwithstanding that the Land Court's ruling may have led to an abandonment of ATDC's project and the maintenance of Irwin Park in its current form, the determination of whether or not Fagan waived the deed restrictions or gifted the reversionary interest is not concomitantly transformed into vindication of public policy of strong societal importance.

was granted or denied, the Land Court's ruling on the Petition was only tangential to the ultimate disposition and future use of Irwin Park and did not include any determination as to whether ATDC's intended use was a violation of HRS § 206J–6 or in contravention of Hawai'i Historic Preservation Law, HRS chapter 6E. *Cf. Sierra Club II,* 120 Hawai'i at 220, 202 P.3d at 1265 (holding that the litigation initiated by Sierra Club was "responsible for establishing the principle of procedural standing in environmental law in Hawai'i and clarifying the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS chapter 343").

2.  Second prong:  the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff

█ As the State points out, the respondents to the Petition, including the persons who hold the private reversionary interests in the Property, appeared and defended their interests.  As noted above, the City also intervened in the case for the purpose of defending essentially the same public interests that Scenic Hawai'i sought to protect. Scenic Hawai'i argues that its intervention was necessary because the State, including the Attorney General, supported ATDC's Petition and the private parties, Olds and Bogart, were California residents with minimal connections with Hawai'i.

These circumstances are in stark contrast to those contemplated to necessitate the services of private attorneys general.  As the supreme court noted in *Waiahole II,* the private attorney general exception to the American Rule is warranted only when the litigated issues are "of enormous significance to the society as a whole, [but] do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts." *Waiahole II,* 96 Hawai'i at 30, 25 P.3d at 805 (citation omitted).  Here, there were actual respondents who vigorously litigated their private interests.  We reject any argument that California residents are inherently less interested in preserving their property rights in Hawai'i, particularly in this case, where they have

appeared and defended those rights.  In addition, even if we assume that the public's interests were at issue in this case and the State did not properly represent the general public's interest in maintaining Irwin Park in its current form, it appears that the City's intervention eliminated any need for "private enforcement."  Like the plaintiffs in *Waiahole II,* and unlike the plaintiffs in *Sierra Club II,* Scenic Hawai'i did not serve "as the sole representative of the vindicated public interest." *Waiahole II,* 96 Hawai'i at 31, 25 P.3d at 806; *see also Sierra Club II,* 120 Hawai'i at 220, 202 P.3d at 1265.

As we conclude that it was unnecessary for Scenic Hawai'i to respond to ATDC's Land Court petition, as necessity is construed under the private attorney general doctrine, we need not consider the magnitude of the burden resulting from Scenic Hawai'i's intervention in this case.

3.  Third prong:  the number of people standing to benefit from the decision

Because Scenic Hawai'i did not satisfy either the first or second prong, there is no need to address the number of people standing to benefit from the decision.  In *Waiahole II,* the supreme court held that the private attorney general doctrine did not apply because although the plaintiffs met the first and third prongs of the doctrine's three-part test, they failed to satisfy the second prong. *Waiahole II,* 96 Hawai'i at 31, 25 P.3d at 806.

4.  The Award of Attorneys' Fees and Costs

As discussed above, a trial court's award of attorneys' fees is reviewed for an abuse of discretion, but a trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the facts of the case. *See Maui Tomorrow,* 110 Hawai'i at 242, 131 P.3d at 525.  This assessment is particularly critical in the application of the private attorney general doctrine's three-prong test, which acts as a constraint on what might otherwise be unbridled judicial discretion to depart from the well-established American

Rule. *See Waiahole II,* 96 Hawai'i at 30–31, 25 P.3d at 805–06. In this case, as the three-prong test is not met, we must conclude that the Land Court abused its discretion in awarding attorneys' fees and costs to Scenic Hawai'i.

## V. CONCLUSION

For these reasons, the Land Court's March 29, 2010 Final Judgment is reversed in part, to the extent that it granted attorneys' fees and costs to Scenic Hawai'i, and is affirmed in all other respects.