*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-30110
28-JUN-2013
12:50 PM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

RICHARD NELSON III, KALIKO CHUN, JAMES AKIONA, SR.,
SHERILYN ADAMS, KELII IOANE, JR., and CHARLES AIPIA (deceased),
Respondents/Plaintiffs/Appellants,

vs.

HAWAIIAN HOMES COMMISSION, THE DEPARTMENT OF HAWAIIAN HOME LANDS,
JOBIE MASAGATANI, in her official capacity as Chair of the
Hawaiian Homes Commission, IMAIKALANI P. AIU, PERRY ARTATES,
LEIMANA K. DAMATE, GENE ROSS DAVIS, JEREMY KAMAKANEOALOHA
HOPKINS, MICHAEL P. KAHIKINA, IAN LEE LOY, and
RENWICK V. I. TASSILL, in their official capacities
as members of the Hawaiian Homes Commission,[1]
Respondents/Defendants/Appellees,

and

KALBERT K. YOUNG, in his official capacity as the State Director
of Finance, and the STATE OF HAWAI'I,
Petitioners/Defendants/Appellees.

_____

SCWC-30110

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 30110, CIVIL NO. 07-1-1663-08)

_____

[1] During the pendency of this motion, Jobie Masagatani succeeded Alapaki Nahale-a as the Chair of the Hawaiian Homes Commission, and Gene Ross Davis succeeded Henry K. Tancayo as a member of the Hawaiian Homes Commission. Thus, pursuant to Hawai'i Rules of Appellate Procedure Rule ("HRAP") 43(c)(1) (2012), Masagatani and Davis have been substituted automatically for Nahale-a and Tancayo in this case.

JUNE 28, 2013

RECKTENWALD, C.J., NAKAYAMA, MCKENNA AND POLLACK, JJ.,
WITH ACOBA, J., CONCURRING AND DISSENTING SEPARATELY, AND
POLLACK, J., CONCURRING SEPARATELY

OPINION OF THE COURT BY MCKENNA, J.

## I. Introduction

Following the publication of this court's opinion in Nelson v. Hawaiian Homes Comm'n, 127 Hawaiʻi 185, 277 P.3d 279 (2012), Respondents/Plaintiffs-Appellants Richard Nelson III, Kaliko Chun, James Akiona, Sr., Sherilyn Adams, Kelii Ioane, Jr., and Charles Aipia (collectively "Plaintiffs"), represented by Native Hawaiian Legal Corporation ("NHLC") requested attorneys' fees and costs[2] as the prevailing party, pursuant to the private attorney general doctrine. Both the State of Hawaiʻi and the Department of Hawaiian Home Lands filed objections[3] to Plaintiffs' request, arguing, inter alia, that Plaintiffs were not the prevailing party, that Plaintiffs do not qualify for an award of fees under the private attorney general doctrine, and that sovereign immunity bars an award of fees in any event. Additionally, DHHL

---

[2]    NHLC has requested both trial and appellate attorneys' fees and costs. This opinion will address only appellate attorneys' fees and costs. "[D]ecisions about fees incurred at the trial level are more properly within the trial court's discretion." S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 76 Hawaiʻi 396, 402, 879 P.2d 501, 507 (1994).

[3]    Prior to filing their objections, the State filed a "Motion to Determine Plaintiffs' Entitlement to Attorneys Fees (Including Applicability of Private Attorney General Doctrine) before Requiring Opposition as to amount of Fees," and DHHL filed its joinder in the State's Motion. Because both the State and DHHL subsequently filed memoranda in opposition to the Plaintiffs' request, these initial motions are hereby denied as moot.

2

objected to the request for costs as inadequately documented. For reasons that follow, we deny Plaintiffs' request for appellate attorneys' fees as barred by the State's sovereign immunity. We also deny Plaintiffs' request for appellate costs without prejudice.

## II. Discussion

### A. Prevailing Party

The first step in analyzing whether Plaintiffs are entitled to attorneys' fees (and costs) is to determine whether they are the "prevailing party." The "prevailing party" is the one who "prevails on the disputed main issue[.]" Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978). Even if the party does not prevail "to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." Id. (citation and footnote omitted).

"The trial court is required to first identify the principle issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues." MFD Partners v. Murphy, 9 Haw. App. 509, 515, 850 P.2d 713, 716 (1992). In the circuit court, the principle issues raised were:

> Count I: The State violated its constitutional duty to sufficiently fund DHHL in order to rehabilitate native Hawaiian beneficiaries, under the Hawai#i State

3

> Constitution's Article XII, Sections 1 and 2
> Count 2:  DHHL violated the constitution and breached its
> trust obligation to beneficiaries to seek sufficient funds
> from the legislature.
> Count 3:  The DHHL Defendants breached their trust
> obligation to beneficiaries by leasing DHHL lands for
> commercial purposes to raise funds.
> Count 4:  The DHHL Defendants breached their obligation to
> trust beneficiaries by failing to ascertain whether trust
> lands are necessary for general homestead purposes before
> offering them for commercial lease.

The circuit court granted summary judgment in favor of the State and DHHL on Counts 1 and 2 based on the political question doctrine.  The parties entered into a Stipulation to Dismiss Count 3 without prejudice and Count 4 with prejudice.  On balance, before the trial court, the Defendants were the prevailing parties, securing summary judgment in their favor on the first two counts and a dismissal with prejudice on the fourth count.

Before the ICA, Plaintiffs prevailed on Counts I and II (or at least succeeded in reversing summary judgment and securing a remand), as the ICA held that the political question doctrine did not bar the determination of what constituted sufficient sums that (1) the State must provide to DHHL and that (2) DHHL must request.  See Nelson v. Hawaiian Homes Comm'n, 124 Hawaiʻi 437, 447, 246 P.3d 369, 379 (App. 2011).

On certiorari, however, only the State further appealed the ICA's decision as to Count I, and the principle issue raised was

> Does the political question doctrine bar Hawaiian Homes
> Commission Act (HHCA) beneficiaries from using Haw. Const.

4

Article XII, Section 1's "sufficient sums" provision to demand more legislative funding of the Department of Hawaiian Home lands (DHHL), when that provision provides no guidance at all as to how quickly homesteads must be developed?

This court held that the political question doctrine did not bar determination of what constituted "sufficient sums" for one of four enumerated purposes under Article XII, Section 1: administrative and operating expenses. Nelson, 127 Hawaiʻi at 188, 277 P.3d at 282. Thus, the extent to which Plaintiffs "prevailed" is at issue.

This court has previously given guidance on determining which party prevailed in a case in which the relief granted was not solely in favor of one party. In Food Pantry, 58 Haw. at 620, 575 P.2d at 879, which involved a lease dispute, this court determined that the lessor was the prevailing party, even though the lessee did receive the relief he requested. In that case, the trial court found that the lessor was required to consent to a sublease under the lease, that the lessee materially breached that provision of the lease, and that the lessor was entitled to terminate the lease. Id. Even though the trial court granted the lessee's requested relief (that the lease not be forfeited and that damages for the breach be paid instead), the lessor was, "on balance," the successful party in the case, based on the pleadings and proof. Id.

In this case, although the State received the relief it

requested on certiorari (that the political question bar the determination of what constitutes "sufficient sums" for the development of homestead lots), Plaintiffs are the prevailing party, because this court affirmed the ICA's judgment, albeit on a narrower ground that the political question doctrine did not bar determination of what constituted "sufficient sums" for administrative and operating expenses only.  More importantly, part of Plaintiffs' claims against the State survived, in that the circuit court's grant of summary judgment in favor of the state was vacated, and this case has been remanded to the circuit court for further proceedings.

Having established that Plaintiffs prevailed on appeal, we next examine whether the private attorney general doctrine entitles them to an award of attorneys' fees.

B.   **Private Attorney General Doctrine**

Normally, "pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses.  This general rule, however, is subject to a number of exceptions," including the private attorney general doctrine.  Sierra Club v. Dep't of Transp., 120 Hawaiʻi 181, 218, 202 P.3d 1226, 1263 (2009).  In In re Water Use Permit Applications, 96 Hawaiʻi 27, 29, 25 P.3d 802, 804 (2001)("Waiahole"), this court first recognized the private attorney general doctrine, which it

6

summarized as follows:

> The doctrine is an equitable rule that allows courts in their discretion to award attorneys' fees to plaintiffs who have "vindicated important public rights." Courts applying this doctrine consider three basic factors:
>> "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision."

(citing Serrano v. Priest, 569 P.3d 1303, 1314 (Cal. 1977)). This court, however, declined to apply the doctrine. Id. It held that the plaintiffs met the first and third prongs of the doctrine, as the underlying case "involved constitutional rights of profound significance [i.e., the apportionment of water rights], and all of the citizens of the state, present and future, stood to benefit from the decision." 96 Hawaiʻi at 31, 25 P.3d at 806. But it also held that the plaintiffs had not met the second prong because they were merely one of several parties who "challenged the decision of a tribunal (the Commission on Water Resource Management or "CWRM") in an adversarial proceeding not contesting any action or policy of the government" and in which the government had not "either completely abandoned, or actively opposed, the plaintiffs' cause." 96 Hawaiʻi at 31-32, 25 P.3d at 806-07. Although declining to award attorneys' fees under the private attorney general doctrine in that case, this court did not foreclose the application of the doctrine "in any future case. . . ." 96 Hawaiʻi at 32, 25 P.3d at 807.

7

In Maui Tomorrow v. State, 110 Hawaiʻi 234, 245, 131 P.3d 517, 528 (2006), this court once again declined to apply the doctrine to award attorneys' fees.  In that case, the plaintiffs had succeeded in appealing a decision of the Board of Land and Natural Resources ("BLNR") to the circuit court, which remanded the matter for further findings, because that agency had not fulfilled its constitutional duty to protect customary and traditional native Hawaiian rights.  See id.  Although this court recognized that the plaintiffs' agency appeal qualified as contesting a governmental policy under the second prong of the private attorney general doctrine, it noted that the BLNR did not "abandon" or "actively oppose" the plaintiffs' cause; it merely mistakenly assumed that the CWRM was responsible for fulfilling the constitutional duty.  Id.  Therefore, this court found that the plaintiffs' case had not fully met the second prong of the private attorney general doctrine and concluded that the circuit court did not abuse its discretion in declining to award fees.  Id.

This court did affirm the trial court's award of attorneys' fees under the private attorney general doctrine in Sierra Club, in which the plaintiffs challenged an exemption of the Superferry project from Hawaiʻi's environmental protection statutes.  120 Hawaiʻi at 230, 202 P.3d at 1275.  As to the first prong, this

8

court concluded that the Sierra Club plaintiffs vindicated an important public policy: they "establish[ed] the principle of procedural standing in environmental law in Hawaii and clarif[ied] the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS Chapter 343." 120 Hawaiʻi at 220, 202 P.3d at 1265. As to the second prong, this court concluded that the plaintiffs' suit was necessary because the DOT "wholly abandoned that duty [to consider both the primary and secondary impacts of the Superferry project on the environment] by issuing an erroneous exemption to the Superferry." 120 Hawaiʻi at 221, 202 P.3d at 1266. As to the third prong, this court stated that the plaintiffs' case benefited society as a whole. Id. In short, the plaintiffs met all three requirements entitling them to an award of attorneys' fees under the private attorney general doctrine.

In the instant case, Plaintiffs arguably met all three prongs, entitling them to attorneys' fees under the private attorney general doctrine. First, the "strength or societal importance of the public policy" they vindicated by their litigation was that the State now must fund DHHL's administrative and operating expenses. As a result, DHHL will be able to shift the funds it was spending on administrative and operating expenses towards fulfilling its trust duties to its

beneficiaries. In general, this court has stated, "It is undisputed that the rights of native Hawaiians are a matter of great public concern in Hawaii." Pele Defense Fund v. Paty, 73 Haw. 578, 614, 837 P.3d 1247, 1268 (1992).

Second, it was necessary for Plaintiffs to resort to private enforcement, as the State made it clear for years that it did not believe it had a duty to sufficiently fund DHHL, and DHHL for years had not requested sufficient sums from the legislature. The State and DHHL had clearly abandoned or actively opposed Plaintiffs' request that the State sufficiently fund DHHL.

Third, the number of people standing to benefit from the Nelson decision is substantial. At the very least, a shift in funding for administrative and operating expenses provides a benefit to the Hawaiian Home Lands trust, impacting at least the tens of thousands of known beneficiaries on the waiting list, and ultimately benefitting the State as a whole, because stewardship of Hawaiian Home Lands was an obligation taken on by the State as a condition for admission into the union. See Admission Act, Pub. L. No. 86-3, 73 Stat. 4 (1959) § 4. In short, Plaintiffs have arguably established an entitlement to attorneys' fees under the private attorney general doctrine.

However, the analysis does not end with the establishment of a right to fees under the doctrine. In analyzing the Sierra Club

10

plaintiffs' attorneys' fee request under the private attorney general doctrine, this court also noted, "Application of the private attorney general doctrine is . . . subject to the defenses which a defendant may have" and explored, inter alia, the State's defense of sovereign immunity. Sierra Club, 120 Hawaiʻi at 221, 225-29, 202 P.3d at 1266, 1270-74. In this case, the State and DHHL have both raised the defense of sovereign immunity as to the requested fees.

### C. Sovereign Immunity

"The doctrine of sovereign immunity 'refers to the general rule, incorporated in the Eleventh Amendment to the United States Constitution, that a state cannot be sued in federal court without its consent or an express waiver of its immunity. The doctrine . . . also precludes such suits in state courts.'" 120 Hawaiʻi at 225-26, 202 P.3d at 1270-71 (citations omitted). "It is well established that the State as sovereign is immune from suit except as it consents to be sued." Figueroa v. State, 61 Haw. 369, 381, 604 P.2d 1198, 1205 (1979)(citations omitted).

In Sierra Club, we stated

> "[A]n award of costs and fees to a prevailing party is
> inherently in the nature of a damage award."[4]  Fought, 87

---

[4]    The Concurrence/Dissent cites Fought for the proposition that "[a]n award of fees and costs grounded in the inherent equitable power of the court is incidental to the underlying suit to which it is attached and thus cannot conceptually be denominated as in the nature of a separate damages award." Concurrence/Dissent at II.B (emphasis in Concurrence/Dissent). Respectfully, Fought observed the opposite: "[T]axation of costs and attorneys' fees is

11

> Hawaiʻi 37, 51, 951 P.2d 487, 501 (1998).  Accordingly, to properly award attorney's fees and costs against [the State] in this case, there must be "a clear relinquishment" of the State's immunity in this case.  Bush [v. Watson, 81 Hawaiʻi 474, 481, 918 P.2d 1130, 1137 (1996)].

Sierra Club, 120 Hawaiʻi at 226, 202 P.3d at 1271.  It is true that sovereign immunity did not bar the Plaintiffs' underlying claims, which were for declaratory and injunctive relief for violations of Article XII, Section 1, and not damages.  See Kahoʻohanohano v. State, 114 Hawaiʻi 302, 337, 162 P.3d 696, 731 (1992)("[S]overeign immunity will not be a bar where governmental action is challenged as unconstitutional.") (citing Pele Defense Fund, 73 Haw. at 607, 837 P.2d at 1265).  However, that sovereign immunity was no bar to the underlying claim "does not necessarily result in a right to attorneys' fees."  Taomae, 110 Hawaiʻi at 333, 132 P.3d at 1244.

Plaintiffs' arguments parallel the analysis in the Sierra Club decision.  They argue that the waiver of sovereign immunity for private attorney general fees in this case is statutory.  "This court has noted that the State has waived immunity to suit only to the extent as specified in HRS chapters 661[5] and 662[6]."

---

essentially an award of damages. . . ."  87 Hawaiʻi at 52, 951 P.2d at 502 (emphasis added).  It would appear, then, that an award of fees under the private attorney general doctrine is in the nature of damages; therefore, under Sierra Club, in order to award fees under the doctrine, a waiver of sovereign immunity must exist.  See Sierra Club, 120 Hawaiʻi at 226, 202 P.3d at 1271.

[5]    HRS § 661-1(1)(1993) provides, with emphasis added:
       **Jurisdiction.** The several circuit courts of the State and, except as otherwise provided by statute or rule, the several

Taylor-Rice v. State, 105 Hawaiʻi 104, 110, 94 P.3d 659, 665 (2004)(citation omitted).[7]  In Sierra Club, this court concluded that HRS § 661-1 waived sovereign immunity on all claims founded upon any statute, the statute in that case being HRS § 343-7 (1993), which authorized judicial review of a state agency's decisions concerning environmental assessments and environmental impact statements.  120 Hawaiʻi at 226-28, 202 P.3d at 1271-73.  This court stated, "Although the text of HRS § 343-7 does not explicitly state that suits may be brought against the State, interpreting the text of [the subsections authorizing judicial review] as something other than a waiver of sovereign immunity

state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury.

    (1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth.

[6]    HRS Chapter 662 (1993) is the State Tort Liability Act, which is not at issue in this appeal.

[7]    Since the passage of Act 395 in 1988, which created HRS Chapter 673, also known as the Native Hawaiian Trust Judicial Relief Act, there are now at least three statutory bases for the waiver of the State's sovereign immunity: HRS Chapters 661, 662, and 673.  It appears Chapter 673 stands on equal footing with Chapters 661 and 662.  See, e.g., Mia Y. Teruya, The Native Hawaiian Trusts Judicial Relief Act:  The First Step in an Attempt to Provide Relief, 14 U. Haw. L. Rev. 889, 905 (1992)("This express waiver of [the State's] sovereign immunity [found in Chapter 673] is unique.  In the past, the State has only allowed a waiver of sovereign immunity for tort and contract actions against the state [pursuant to Chapters 662 and 661, respectively].  No other state in the country allows itself to be sued for breaches of its fiduciary duties.")(footnotes omitted).

13

would create an absurd result."  120 Hawaiʻi at 227, 202 P.3d at 1272.  The <u>Sierra Club</u> court then further held that, because the State consented to be sued, its liability is to be "judged under the same principles as those governing the liability of private parties."  120 Hawaiʻi at 229, 202 P.3d at 1274 (citing <u>Fought</u>, 87 Haw. at 56, 951 P.2d at 506).  It concluded that the statutory waiver of immunity found in HRS §§ 661-1(1) and 343-7, coupled with the private attorney general doctrine, provided a basis for the award of attorneys' fees to the plaintiffs.  120 Hawaiʻi at 229, n.30, 202 P.3d at 1274, n.30.

### 1. HRS § 661-1(1) and Chapter 632

In this case, Plaintiffs parallel the analysis in <u>Sierra Club</u> (which drew heavily upon <u>Fought</u>, 87 Hawaiʻi 37, 951 P.2d 487) to argue that HRS § 661-1(1)'s waiver of sovereign immunity applies, and that their claims were founded on statute, specifically HRS Chapter 632 (1993).  For its part, the Dissent argues that "Plaintiffs here should not have to demonstrate a waiver of sovereign immunity specifically over attorneys' fees," citing <u>Fought</u> and <u>Sierra Club</u>'s extension of <u>Fought</u>.  Concurrence/Dissent at II.A.  We respectfully disagree with both the Plaintiffs and the Concurrence/Dissent because the instant case does not implicate HRS § 661-1 or any statutory waiver of sovereign immunity; rather, this case involves claims for

14

declaratory and injunctive relief based on alleged constitutional violations.

Fought held that "a further waiver of sovereign immunity is not necessary in order for HRS § 607-14 [a fee-shifting statute for "all actions in the nature of assumpsit"] to apply to the state and its respective agencies in matters which, by virtue of the express waiver of sovereign immunity set forth in HRS § 661-1, the state (or any of its agencies) has become a party."  87 Hawaiʻi at 56, 951 P.2d at 506.  Sierra Club then extended Fought's holding that a further waiver of sovereign immunity was not necessary in order for the private attorney general doctrine to apply to the state, by virtue of the express waivers of sovereign immunity set forth in HRS §§ 661-1(1) and 343-7.  Sierra Club, 120 Hawaiʻi at 229, 202 P.3d at 1274.

However, Fought's (and Sierra Club's) holdings cannot be extended to this case, because this case does not truly arise under HRS § 661-1.  Plaintiffs argue that their case fits under HRS § 661-1's statutory waiver of sovereign immunity because their claims are "founded upon any statute of the State," with the statute being HRS § 632-1, which authorizes declaratory and injunctive relief.  We have already rejected this line of reasoning, however, as follows:  "Where a party seeks only injunctive relief, the ability to sue the state does not stem

15

from a waiver of sovereign immunity, but from the fact that sovereign immunity does not bar the suit in the first place." Sierra Club, 120 Hawaiʻi at 229 n.30, 202 P.3d at 1274 n.30. Therefore, "no clear statutory waiver . . . that could be extended to attorney's fees" is present when the underlying claim is for declaratory and/or injunctive relief. Id. Moreover, we have also already held that declaratory and injunctive relief based on claims of constitutional violations is "not 'cognizable under HRS chapter 661. . . .'" Kahoʻohanohano, 114 Hawaiʻi at 338, 162 P.3d at 732 (brackets omitted). Because Fought and Sierra Club would allow attorneys' fees awards based upon waivers of sovereign immunity over the underlying claims, found in HRS § 661-1 and HRS §§ 607-14 and 343-7, respectively, these cases are of little assistance to the Plaintiffs and the Concurrence/Dissent.

### 2. Chapter 673

Additionally, Plaintiffs argue that the State also waived its sovereign immunity pursuant to Chapter 673 (1993), the Native Hawaiian Trusts Judicial Relief Act. Chapter 673 governs claims of mismanagement of Home Lands Trust assets. It is true that Chapter 673 contains a clear general waiver of the State's sovereign immunity, see Office of Hawaiian Affairs v. State, 110 Hawaiʻi 338, 358, 133 P.3d 767, 787 (2006)("A plain reading of

16

HRS § 673-1 indicates that it unequivocally waives the State's sovereign immunity" over breach of trust claims), HRS § 673-1(a) ("The State waives its immunity for any breach of trust or fiduciary duty resulting from the acts or omissions of its agents, officers and employees in the management and disposition of trust funds and resources of . . . [t]he Hawaiian home lands trust. . . ."). There is also a clear fee-shifting provision, which arguably could include attorneys' fees under the private attorney general doctrine. See, e.g., HRS § 673-5(b)(1993)("In any action brought under this chapter in which there is no finding by the court that the claims pled were frivolous the court may, as it deems just, award to a prevailing plaintiff and enter as a part of its order or judgment, a reasonable sum for costs and expenses incurred, including reasonable attorney's fees.") Plaintiffs, however, did not bring their claims under Chapter 673 in their First Amended Complaint; Chapter 673 is not even mentioned.

Although Plaintiffs' allegations are about the Hawaiian Home Lands Trust, they contend that the State failed to provide sufficient sums to DHHL in violation of its constitutional obligations under Article XII, §§ 1 and 2, and not in violation of Chapter 673. Plaintiffs allege that DHHL also violated the constitution and breached its fiduciary duties by failing to

17

request sufficient sums, that DHHL breached its fiduciary duties by commercially leasing homestead lands in Kealakehe to a non-Hawaiian entity, and that DHHL should be prohibited from commercially leasing homestead lands for non-homesteading purposes without first making specific findings that such lands are not needed for homesteads.  Their claims against DHHL expressly sound in trust law, not Chapter 673.

Although Plaintiffs do not allege that existing trust land or assets were improperly managed or disposed of, they do allege that "sufficient sums" are constitutionally mandated to be added to the trust assets and the Defendants have breached constitutional and trust duties in failing to do so.  From that perspective, Plaintiffs' claims appear to fall under Chapter 673 because they are about "breach of trust or fiduciary duty resulting from the acts or omissions of [the State's] agents, officers and employees in the management and disposition of trust funds and resources of . . . [t]he Hawaiian home lands trust[.]"

However, Plaintiffs did not assert Chapter 673 in their First Amended Complaint.  In addition, other provisions in Chapter 673 make it apparent that, while Plaintiffs generally allege breach of trust, their claims do not allege Chapter 673 violations or seek Chapter 673 relief.  First, the relief Plaintiffs request does not match the relief authorized under

18

Chapter 673. In their First Amended Complaint, Plaintiffs' requested only declaratory and injunctive relief, not damages (other than attorneys' fees), and not a return of trust land or moneys, which is the only relief that Chapter 673 authorizes. See HRS § 673-4(a) (1993) ("In an action under this chapter the court may only award land or monetary damages to restore the trust which has been depleted as a result of any breach of trust duty[,]" as well as some actual damages).[8]

Second, there is no evidence in the record that Plaintiffs complied with HRS § 673-3 (1993)'s notice and exhaustion of administrative remedies requirements, which are:

> Before an action may be filed in circuit court under this chapter, the party filing suit shall have exhausted all administrative remedies available, and shall have given not less than sixty days written notice prior to filing of the suit that unless appropriate remedial action is taken suit shall be filed. All executive branch departments shall adopt in accordance with chapter 91, such rules as may be necessary to specify the procedures for exhausting any remedies available.

There is a process by which Plaintiffs could have exhausted their administrative remedies. See, e.g., Hawaiʻi Administrative Rules Chapter 5, Title 10, Subchapter 3, Contested Case Rules.

Failure to comply with HRS § 673-3 has proven fatal to

---

[8] One law review article has interpreted Chapter 673 to exclude injunctive relief. See Eric K. Yamamoto, Moses Haia, and Donna Kalama, Courts and the Cultural Performance: Native Hawaiians' Uncertain Federal and State Rights to Sue, 16 U. HAW. L. REV. 1, 74 (1994)("Most important, Chapter 673 limits available remedies. Suits may be initiated only to restore the trust corpus depleted by the wrongful alienation or use of trust lands or funds, and to recover actual out-of-pocket damages sustained by individual claimants. Chapter 673 does not authorize consequential damages, punitive damages, land awards or injunctive relief.")(footnotes omitted).

19

Chapter 673 breach of trust claims.  In <u>Office of Hawaiian Affairs</u>, 110 Hawaiʻi at 359, 133 P.3d at 788, the only case construing Chapter 673, we held that plaintiffs must exhaust their administrative remedies and provide sixty days' notice, pursuant to HRS § 673-3; absent fulfillment of these requirements, the circuit and appellate courts lack subject matter jurisdiction over the Chapter 673 claims.  Plaintiffs' claims were not brought under Chapter 673 because Chapter 673 is not mentioned in their First Amended Complaint, and there is nothing in the record about the exhaustion of administrative remedies and the notice given to the State Defendants.  That being the case, the circuit court would have lacked jurisdiction to hear claims alleging Chapter 673 violations, and this court is "preclude[d] from reviewing any claims brought under Chapter 673," including, presumably, claims for an award of attorneys' fees pursuant to the private attorney general doctrine.  <u>Id.</u>

In short, it would appear, as Defendants argue, that Plaintiffs' after-the-fact reliance on Chapter 673 for a waiver of the State's sovereign immunity is solely for the purpose of their attorneys' fee request.  Plaintiffs' claims were not made under Chapter 673.

20

### 3. Article XII

Rather, at their core, and as asserted in their First Amended Complaint, Plaintiffs' claims were about the Defendants' violation of their constitutional duties under Article XII, Section 1.  In Kahoʻohanohano, 114 Hawaiʻi at 338, 162 P.3d at 732, this court considered claims based on the Hawaiʻi Constitution to be "not cognizable under HRS § 661" as "not 'founded upon any statute of the State. . . .'"  Thus, one must look to the true basis of Plaintiffs' claim, Article XII, Section 1, for a clear waiver of the State's sovereign immunity, and there is none.  Article XII, Section 1 provides:

> Anything in this constitution to the contrary notwithstanding, the Hawaiian Homes Commission Act, 1920, enacted by the Congress, as the same has been or may be amended prior to the admission of the State, is hereby adopted as a law of the State, subject to amendment or repeal by the legislature;  provided that if and to the extent that the United States shall so require, such law shall be subject to amendment or repeal only with the consent of the United States and in no other manner;  provided further that if the United States shall have been provided or shall provide that particular provisions or types of provisions of such Act may be amended in the manner required for ordinary state legislation, such provisions or types of provisions may be so amended.  The proceeds and income from Hawaiian home lands shall be used only in accordance with the terms and spirit of such Act.  The legislature shall make sufficient sums available for the following purposes: (1) development of home, agriculture, farm and ranch lots; (2) home, agriculture, aquaculture, farm and ranch loans; (3) rehabilitation projects to include, but not limited to, educational, economic, political, social and cultural processes by which the general welfare and conditions of native Hawaiians are thereby improved; (4) the administration and operating budget of the department of Hawaiian home lands; in furtherance of (1), (2), (3) and (4) herein, by appropriating the same in the manner provided by law.
> Thirty percent of the state receipts derived from the leasing of cultivated sugarcane lands under any provision of

21

> law or from water licenses shall be transferred to the native Hawaiian rehabilitation fund, section 213 of the Hawaiian Homes Commission Act, 1920, for the purposes enumerated in that section. Thirty percent of the state receipts derived from the leasing of lands cultivated as sugarcane lands on the effective date of this section shall continue to be so transferred to the native Hawaiian rehabilitation fund whenever such lands are sold, developed, leased, utilized, transferred, set aside or otherwise disposed of for purposes other than the cultivation of sugarcane. There shall be no ceiling established for the aggregate amount transferred into the native Hawaiian rehabilitation fund.

There being no waiver of the State's sovereign immunity under Article XII, Section 1 for an award of attorneys' fees, the State's sovereign immunity bars an award of appellate attorneys' fees to Plaintiffs based on the private attorney general doctrine, based on the record that exists at this juncture.

The Dissent argues that "because Plaintiffs' constitutional claims in the underlying action did not implicate the State's sovereign immunity, their claims for an award of attorneys' fees under the private attorney general doctrine should not require a separate waiver of sovereign immunity." Concurrence/Dissent at V. Implicit in this argument is an extension of Fought's HRS § 661-1 holding to cases involving constitutional violations. In support of this argument, the Dissent states, "A waiver of sovereign immunity separate from the underlying claim is not necessary under this court's prior jurisprudence, . . . whether the waiver is founded on statute, see Fought, 87 Hawaiʻi at 56, 951 P.2d at 506, or the claim is founded on a constitutional

22

provision, see Kahoʻohanohano, 114 Hawaiʻi at 337, 163 P.3d at 731." Concurrence/Dissent at IV.

Respectfully, this statement expands Fought's holding too broadly and misapplies Kahoʻohanohano. Relevant to this case, Kahoʻohanohano held only that sovereign immunity is no defense against a claim for declaratory and injunctive relief concerning an act of the legislature that allegedly violated the Hawaiʻi Constitution. Kahoʻohanohano, 114 Hawaiʻi at 335-38, 162 P.3d at 729-32. Attorneys' fees were not at issue. Therefore, Kahoʻohanohano does not stand for the proposition that if the underlying action is not barred by sovereign immunity, an entitlement to fees follows.

In fact, we have already expressly rejected this argument on a motion for attorneys' fees nearly indistinguishable from the instant one on the issue of sovereign immunity. In Taomae, as in this case, the plaintiffs prevailed on their claim that the state legislature's action violated the Hawaiʻi Constitution. 110 Hawaiʻi at 332, 132 P.3d at 1243. The Taomae plaintiffs then requested attorneys' fees, declaring (similarly to the Concurrence/Dissent) that "if sovereign immunity does not bar the underlying action, then no waiver is required for the imposition of fees and costs" pursuant to this court's "inherent powers."

23

110 Hawaiʻi at 333, 132 P.3d at 1244. We rejected that argument, holding "simply because 'sovereign immunity did not bar the instant contest,'" because the plaintiffs' claim was for injunctive relief, "it cannot be assumed that an assessment of fees and costs is appropriate." Id. We denied attorneys' fees, concluding, "Plaintiffs have not demonstrated an entitlement to fees under Fought. And unlike in Fought, no statute authorizes a shift in fees. . . ." Id. Thus, contrary to the Dissent's assertion in Concurrence/Dissent at II.A, this case is indistinguishable from Taomae. Even where the underlying suit for declaratory and injunctive relief for a constitutional violation is not precluded by sovereign immunity, there must exist some authorization for a shift in attorneys' fees, as those are in the nature of damages. In this case, there is no such authorization.

Kahoʻohanohano also did not apply Fought's HRS § 661-1 holding to constitutional claims, and in fact, held that constitutional claims are not founded upon any statute and are therefore not cognizable under HRS § 661. 114 Hawaiʻi at 338, 162 P.3d at 732. In short, there exists no authority entitling a prevailing party to attorneys' fees under the private attorney general doctrine where sovereign immunity did not preclude an underlying declaratory and/or injunctive relief claim that the

24

State violated the Hawaiʻi Constitution.

## D. Costs

HRAP Rule 39(d)(2012) requires parties requesting appellate costs to "submit[] an itemized and verified bill of . . . costs, . . . and, where appropriate, copies of invoices, bills, vouchers, and receipts. . . ." In this case, Plaintiffs filed an Exhibit A with their request for costs that did not include supporting documentation such as invoices, bills, vouchers, and receipts.

DHHL objected to the costs request as noncompliant with HRAP Rule 39. When an adverse party objects to the award of costs on the basis of noncompliance with HRAP Rule 39's itemization and documentation requirements, this court may deny those costs. See, e.g., Rapozo v. Better Hearing of Hawaiʻi, LLC, 120 Hawaiʻi 257, 264, 204 P.3d 476, 483 (2009).

Plaintiffs then submitted with their Reply a corrected costs request, including copies of invoices, bills, vouchers, and receipts. Documented cost requests that are unchallenged by an adverse party can be granted without regard to their reasonableness. Blair v. Ing, 96 Hawaiʻi 327, 335, 31 P.3d 184, 192 (2001). It would not be fair, however, to presume Plaintiffs' costs to be reasonable, as neither the State nor DHHL has had an opportunity to challenge the reasonableness of

Plaintiffs' costs, because they were itemized and documented for the first time in Plaintiffs' Reply, and nothing in the Hawaiʻi Rules of Appellate Procedure allows the State or DHHL to file any response to a Reply.  Accordingly, Plaintiffs' request for costs is denied without prejudice.  See County of Hawaiʻi v. C & J Coupe Family Ltd. P'ship, 120 Hawaiʻi 400, 414-15, 208 P.3d 713, 727-28 (2009)("[W]aiting until the Errata to provide the appropriate support [for fees] leaves the [Appellee] without an opportunity to make specific objections to those items.  Therefore, Appellant's request for attorneys' fees for preparation of the Request and the subsequent Response is denied.")  At the appropriate time upon remand, Plaintiffs may renew their request for appellate costs before the circuit court, which is in a position to award both trial and appellate costs. A properly documented appellate cost request will allow both the State and DHHL an opportunity to file any objections.

26

## III.  Conclusion

Plaintiffs' request for appellate attorneys' fees pursuant to the private attorney general doctrine is denied as barred by the doctrine of sovereign immunity, based on the record that exists at this juncture.  Plaintiffs' requests for appellate costs is denied without prejudice.

| | |
|---|---|
| Robert K. Nakatsuji,<br>Girard D. Lau, and<br>Charleen M. Aina for<br>petitioners/defendants/<br>appellees | /s/ Mark E. Recktenwald<br><br>/s/ Paula A. Nakayama<br><br>/s/ Sabrina S. McKenna |



David Kimo Frankel and
Alan T. Murakami for
respondents/plaintiffs/
appellants

Melvyn M. Miyagi,
Brian A. Kang, and
Emi L. M. Kaimuloa for
respondents/defendants/
appellees